IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **REESE THOMPSON and MARGARET THOMPSON**,<br><br>       Plaintiffs,<br><br>    v.<br><br>**DENNIS WIDMER CONSTRUCTION, INC., an Oregon Corporation**,<br><br>       Defendant.<br><br>**DENNIS WIDMER CONSTRUCTION, INC.**,<br><br>       Third Party Plaintiff,<br><br>    v.<br><br>**EDGEWOOD CONSTRUCTION, LLC, an Oregon Limited Liability Company**,<br><br>       Third Party Defendant. | Case No. 3:20-cv-01145-IM<br><br>**OPINION AND ORDER** |

PAGE 1 – OPINION AND ORDER

|  |  |
|---|---|
| and | |
| **CONTRACTORS BONDING AND INSURANCE COMPANY, an Illinois Corporation**, | |
| Garnishee. | |

Jason E. Hirshon, Slinde Nelson Stanford, 111 SW 5th Avenue, Suite 1940, Portland, OR 97204. Attorney for Plaintiffs.

Paul A. Mockford, Parsons Farnell & Grein LLP, 1030 SW Morrison Street, Portland, OR 97205. Attorney for Defendant and Third Party Plaintiff Dennis Widmer Construction, Inc.

David P. Rossmiller and Elissa M. Boyd, Betts, Patterson & Mines, P.S., 111 SW Fifth Avenue, Suite 3650, Portland, OR 97204. Attorneys for Garnishee Contractors Bonding and Insurance Company.

**IMMERGUT, District Judge.**

This matter comes before the Court on Defendant/Third Party Plaintiff Dennis Widmer Construction, Inc.'s ("DWC") Motion to Compel production by Garnishee Contractors Bonding and Insurance Company ("CBIC"). ECF 14. Defendant DWC moves the Court for an order compelling CBIC to "produce unredacted copies of the documents labeled CBIC 857–862, CBIC 724–732, and CBIC 774–780." ECF 14 at 2; *see also* ECF 15-5 at 1-2 (CBIC email describing documents and asserting attorney-client and work product protection).

This Court held a hearing on this Motion on March 12, 2021, and thereafter reviewed the sought materials *in camera*. For the following reasons, DWC's Motion to Compel, ECF 14, is GRANTED IN PART and DENIED IN PART.

Specifically, this Court finds that CBIC has *not* met its burden of establishing protection with respect to the following: the redaction on CBIC 859, covering Ashlee Lepa's January 30, 2020 message to File regarding "coverage," for which CBIC asserted both attorney-client and

PAGE 2 – OPINION AND ORDER

work product; the redaction on CBIC 858 covering Ashlee Lepa's February 6, 2020 message to File regarding "coverage," for which CBIC asserted work product protection only; and the redaction on CBIC 857, covering Ashlee Lepa's February 14, 2020 message to File regarding "coverage," for which CBIC asserted work product protection only. ECF 15-3 at 3; ECF 15-5 at 1. CBIC is hereby ordered to turn over these materials, unredacted, to DWC.

This Court finds that CBIC *has* established that it is entitled to protection for the following: the redactions on CBIC 857-58, covering Dena Durand's February 7, 2020 message regarding coverage, for which CBIC asserted work product and attorney client protection; the redactions on CBIC 724-732, covering Ashlee Lepa's April 9, 2020 "e-mail discussing coverage analysis and including attachments related to analysis," for which CBIC asserted both protections; and the redactions on CBIC 774-780, covering May 11, 2020 emails from Larry Gottlieb discussing "coverage analysis," with attachments, and "mediation and coverage strategy," for which CBIC asserted both protections. ECF 15-3 at 1-3; ECF 15-5 at 1-2. The Court further finds that with respect to these redactions, DWC has not shown that removing the protection is warranted. The Motion is denied with respect to those redactions.

## BACKGROUND

This case began as a construction lawsuit. Plaintiffs Reese and Margaret Thompson sued DWC, their general contractor, in Oregon state court (the "Thompson litigation") for property damage to their home. ECF 6 at ¶¶ 6, 11. DWC's liability insurer, CBIC, defended DWC against that lawsuit pursuant to Commercial General Liability Policy number D12HA1537 (the "Policy"). ECF 3 at 6; ECF 6 at ¶¶ 5, 12. CBIC defended DWC under a reservation of rights. ECF 6 at ¶ 12.

DWC alleges that in the Thompson litigation, CBIC repeatedly refused to settle, was not responsive to the Thompsons' offers or DWC's communications, and only offered to pay

PAGE 3 – OPINION AND ORDER

settlement amounts that were too low. See ECF 6 at ¶¶ 15-35, 37. The Thompsons offered to settle their claims against DWC first for $250,851 and then for $198,000. *Id*. at ¶¶ 15, 18. DWC's defense counsel opined to CBIC that DWC faced liability for between $190,000 and $280,000 at trial. *Id*. at ¶ 19. CBIC offered between $40,000 and $60,000 to settle the suit. *Id*. at ¶¶ 17, 24, 28.

After CBIC notified DWC's defense counsel that CBIC would not pay more than $60,000 to settle the Thompson litigation, DWC entered into an agreement with the Thompsons to proceed with a stipulated judgment of $225,000 liability for DWC. ECF 6 at ¶¶ 24-29. On May 20, 2020, a Stipulated Limited Judgment and Money Award against DWC was signed by the state court. ECF 6 at ¶ 30. On June 15, 2020, the Thompsons, now judgment creditors, served a Writ of Garnishment on CBIC, an insurer of DWC. ECF 1 at ¶ 2; ECF 6 at ¶ 36.

On July 15, 2020, Garnishee CBIC removed the Writ of Garnishment proceeding to this Court based on diversity. ECF 1. On July 16, 2020, CBIC filed its Response, denying that it owes any debt "to the Thompsons as Garnishors or to DWC pursuant to the applicable Policy provisions, exclusions and limitations." ECF 3 at 2, 6.

On September 16, 2020, DWC filed crossclaims against CBIC. ECF 6. DWC alleges that in the Thompson litigation, CBIC breached its contractual and fiduciary duties to DWC by, among other things, failing to settle the Thompson litigation against DWC and refusing to pay the resulting judgment against DWC. ECF 6 at ¶ 1; *see also id*. at ¶¶ 15-35, 37, 38-55. On October 7, 2020, CBIC filed its Answer to DWC's crossclaims, as well as affirmative defenses of failure to state a claim, unclean hands, no coverage, waiver, and estoppel. ECF 11 at ¶¶ 58-63. CBIC also brings counterclaims for a declaratory judgment that it does not owe a duty to indemnify DWC and for breach of contract. *Id*. at 10, 14; *id*. at ¶¶ 17-18, 20-25.

On February 5, 2021, DWC filed the instant Motion to Compel and supporting materials. ECF 14; ECF 15. DWC seeks unredacted copies of the documents labeled CBIC 857–862, CBIC 724–732, and CBIC 774–780. ECF 14 at 2. DWC argues that (1) privilege and work product protection do not apply to claims handling, ECF 14 at 6-9; (2) the crime-fraud exception pierces any privilege, *id*. at 9-13; (3) any work product protection is overcome by DWC's need for the withheld documents, *id*. at 13-14; and (4) CBIC waived any work product protection or attorney-client privilege, *id*. at 14-15. CBIC responds that (1) its communications with its coverage counsel are protected under the work product doctrine and attorney-client privileges, ECF 16 at 4-12; (2) the crime-fraud exception is inapplicable, *id*. at 12-15; and (3) no waiver has occurred, *id*. at 15.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may discover any unprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Pre-trial discovery is "accorded a broad and liberal treatment." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

The parties agree that Oregon law governs the attorney-client privilege analysis and federal law, specifically the Federal Rules of Civil Procedure, governs the work product protection analysis. ECF 14 at 6; ECF 16 at 5; *see also Triangle Park, LLC v. Indian Harbor Ins. Co.*, No. 08-CV-1256-BR, 2010 WL 11579377, at *5 (D. Or. July 23, 2010); *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1076 n.8 (9th Cir. 2000).

Oregon's attorney-client privilege is codified by statute and provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services

PAGE 5 – OPINION AND ORDER

to the client . . . ." Or. Rev. Stat. § 40.225 (alternatively cited as Oregon Rule of Evidence 503). The attorney-client privilege applies when: (1) the communication was "confidential," (2) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (3) the communication was between the lawyer and the client. *State ex rel. Oregon Health Sciences Univ. v. Haas*, 325 Or. 492, 501 (1997). The party asserting the privilege bears the burden of establishing that the privilege applies. *Goldsborough v. Eagle Crest Partners, Ltd.*, 314 Or. 336, 339 (1992).

Federal Rule of Civil Procedure 26 protects attorney work product from discovery if it was prepared in anticipation of litigation by a party or its representative. *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989); *Triangle Park*, 2010 WL 11579377, at *6. The party asserting the work product doctrine bears the burden of establishing, for each document, the rule's application. *Triangle Park*, 2010 WL 11579377, at *6 (citations omitted).

## DISCUSSION

**A. Attorney-Client Privilege and Work Product Protection Apply to Some but not All of the Sought Materials**

"'Most courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are [generated] in the ordinary course of an insurer's business and [are] not work product' even if this inquiry or evaluation was undertaken by an attorney." *Triangle Park*, 2010 WL 11579377, at *6 (quoting *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 662 (S.D. Ind. 1991)); *see also Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007) ("it is undisputed that the insured's and the insurer's communications with the defense counsel, and any work product created in defense

of the underlying claim, may be discovered by the insured in a subsequent action") (quoting party in case) (quotation marks omitted).

However, "communications between an insurer and its separately-retained 'coverage counsel' on matters related to the insurer's coverage obligations" are a separate matter. *Lexington*, 240 F.R.D. at 668 (quotation marks in original). The attorney-client privilege may apply to communications between an insurer and coverage counsel that is retained "to provide legal advice regarding [an insurer's] coverage obligations under the policy." *Id*. (citing *Tudor Ins. Co. v. McKenna Assocs*., 2003 WL 21488058 at *3 (S.D.N.Y. June 25, 2003)); *cf. Cedell v. Farmers Ins. Co. of Washington*, 176 Wash. 2d 686, 699 (2013) (distinguishing between "the quasi-fiduciary tasks of investigating and evaluating or processing the claim" and the privileged tasks of "providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law").

Different jurisdictions draw the fine line between privileged and non-privileged materials in the bad faith insurance claims context at different places. The parties have not directed this Court to any Oregon state court opinions directly addressing this issue. The parties rely substantially on the District of Oregon decision *Triangle Park*.

**1. Attorney-Client Privilege**

In *Triangle Park*, the court distinguished between discoverable and non-discoverable categories in an insurance dispute over an EPA letter that was sent to the insured before the policy was in place. In its holding, the court stated that the claims adjuster "examined the language of the four corners of the policy in light of the fact that [the insured] had received [an EPA notice letter]. [The adjuster's] initial conclusion was that the [letter] was a claim within the meaning of the policy. [Coverage counsel], however, conducted legal analysis and made legal

PAGE 7 – OPINION AND ORDER

recommendations beyond interpretation of the four corners of the policy." *Triangle Park*, 2010 WL 11579377, at *16. Coverage counsel "was mainly evaluating [the insured's] allegations that [the insurer's] underwriters were aware of the [ ] EPA letter as well as the possible consequences to coverage if, in fact, the underwriters had such knowledge." *Id*. at *13. The insured and insurer corresponded "through" coverage counsel for roughly eight months. *Id*. at *3. The court upheld the attorney-client privilege.

Here, as in *Triangle Park*, coverage counsel evaluated certain facts to determine possible legal consequences for coverage. CBIC states that it "did not engage coverage counsel until after defense counsel's pre-mediation report [on January 3, 2020] stated, unprompted, that 'Edgewood Construction was not the actual framing subcontractor on the project, but rather was labor for [DWC] to share in the framing costs.'" ECF 16 at 10 (quoting ECF 15-2 at 8). CBIC also did not hire coverage counsel until after the January 22, 2020 mediation failed. *See* ECF 15-5 at 1-2 (first document claiming privilege dated January 30, 2020). This Court's *in camera* review confirmed that the May 11, 2020 Gottlieb redactions on pages CBIC 774-780, the February 7, 2020 Durand redactions on CBIC 857-58, and the April 9, 2020 Lepa redactions on CBIC 724-732 involve tasks outside the scope of ordinary claims handling. Accordingly, these materials are protected by the attorney-client privilege under Oregon law.

However, for the redaction on CBIC 859, covering Ashlee Lepa's January 30, 2020 message to File regarding "coverage," CBIC has not met its burden of establishing that this material is privileged. This document "relates to the retention of coverage counsel." ECF 15-5 at 1. In this document, Ms. Lepa is acting as a claims adjuster and making a note based on the claims handling process and the four corners of the policy. CBIC has not established that this document is entitled to protection and accordingly must provide it to DWC.

### 2. Work Product Protection

For similar reasons, the May 11, 2020 Gottlieb redactions on pages CBIC 774-780, the February 7, 2020 Durand redactions on CBIC 857-58, and the April 9, 2020 Lepa redactions on CBIC 724-732 are protected by the work product doctrine under federal law. In *Triangle Park*, the court explained that Rule 26 "require[s] a more substantial and specific threat of litigation before a party's anticipation will be considered a reasonable and justifiable motivating force." *Triangle Park*, 2010 WL 11579377, at *11. A party "must demonstrate that at the very least some articulable claim, likely to lead to litigation[,] had arisen, that the probability of litigation is substantial and imminent, objective facts establishing an identifiable resolve to litigate, or an identifiable specific claim or impending litigation when the materials were prepared." *Id*. (internal citations and quotation marks omitted).

Here, CBIC did not retain coverage counsel until after the January 22, 2020 mediation failed and after it had learned of certain facts which it later asserted justified its coverage position. *See* ECF 15-5 at 1; ECF 15-2 at 7-8. After CBIC learned of the specific facts justifying its coverage position and after the failed mediation, an "articulable claim, likely to lead to litigation," had arisen. *Id*. (quotation marks and citation omitted). Indeed, DWC's coverage counsel sent its first letter to CBIC on March 4, 2020, suggesting that both parties began to anticipate litigation around the same time. ECF 15-7 at 1.

That said, CBIC has failed to establish that it is entitled to work product protection for the redaction on CBIC 859, covering Ashlee Lepa's January 30, 2020 message to File regarding "coverage," for which CBIC asserted both attorney-client and work product protection; the redaction on CBIC 858 covering Ashlee Lepa's February 6, 2020 message to File regarding "coverage," for which CBIC asserted work product protection only; and the redaction on CBIC

857, covering Ashlee Lepa's February 14, 2020 message to File regarding "coverage," for which CBIC asserted work product protection only. ECF 15-3 at 3; ECF 15-5 at 1. The January 30, 2020 note, as explained above, involves a claims adjuster making a note as part of the claims adjustment process. The February 6 and 14, 2020 messages concern "coverage directions related to the Thompsons," the plaintiffs in the underlying action who were then suing CBIC's insured, DWC. ECF 15-5 at 1. CBIC briefly argues that interactions with the Thompsons are protected because they were "not in relation to the underlying claim but in relation to the anticipated coverage litigation." ECF 16 at 11. Given the role of a liability insurer, the Court is not persuaded and finds that CBIC has not established that the protection applies. CBIC must turn over these materials.

## B.  The Crime-Fraud Exception Does Not Pierce the Privilege

For the documents where the attorney-client privilege has attached, DWC asserts that the crime-fraud exception pierces the privilege because CBIC obtained information used to form its coverage defense from DWC's defense counsel and because CBIC did not "split the claims file." ECF 14 at 9-13. The Court disagrees.

Under Oregon law, "[i]f the services of the lawyer . . . were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud," any privilege does not attach. Or. Rev. Stat. § 40.225(4)(a). DWC alleges that CBIC committed fraud by "abusing its fiduciary position to further its own interests at DWC's expense," by using information obtained through the claims process to reach an unfavorable coverage position and not separating the adjuster responsible for the insured's defense from the coverage analysis. ECF 14 at 9-13. DWC requests *in camera* review to "confirm" the "crime." *Id*. at 13.

To invoke the crime-fraud exception to privilege in Oregon, a party "must show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful. Good-faith consultations with attorneys by clients who are uncertain about the legal implications of a proposed course of action are entitled to" the privilege. *State ex rel. N. Pac. Lumber Co. v. Unis*, 282 Or. 457, 464 (1978); *see also Frease v. Glazer*, 330 Or. 364, 373-74 (2000) (en banc) (evaluating party's "intent when he retained [counsel] to represent him"). To obtain *in camera* review of allegedly privileged materials for purposes of evaluating the crime-fraud exception's applicability, a party "'must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability.'" *Frease*, 330 Or. at 372 (quoting *United States v. Zolin*, 491 U.S. 554, 574-75 (1989)).

DWC has not presented evidence sufficient to support a reasonable belief that *in camera* review may demonstrate that CBIC knew or should have known when consulting its coverage counsel that its actions were unlawful. DWC notes that in a fiduciary relationship such as the one here, "fraud may be predicated on a simple failure to make a full and fair disclosure of the relevant facts." *In re Conduct of Brown*, 326 Or. 582, 595 (1998); *see also Fountaincourt Homeowners' Ass'n v. Fountaincourt Dev., LLC*, 360 Or. 341, 354-55 (2016). But DWC has not met its burden to show that CBIC *intended* to violate fiduciary duties when it worked with coverage counsel to evaluate legal coverage issues. *See State v. Taylor*, 247 Or. App. 339, 347 (2011). For this reason, the Court did not review the communications *in camera* for applicability of the crime-fraud exception. DWC admits that privilege issues in the insurance context are often unclear, ECF 14 at 6 (discussing *Triangle Park*), and mostly cites cases from outside of Oregon in support of applying the crime-fraud exception in this context. *Id*. at 9-13. In turn, CBIC's reliance on *Triangle Park* in discovery emails in this action suggests that CBIC believed working

PAGE 11 – OPINION AND ORDER

with coverage counsel to evaluate legal coverage issues when it did so was privileged and lawful activity.

Oregon courts have found failure to satisfy the lower *in camera* burden even when the activity at issue was more obviously unlawful than the activities at issue here. *See, e.g., Frease*, 330 Or. at 373-74 (finding showing insufficient to warrant *in camera* review where party alleged that opponent "retained [counsel's] services to assist him in fleeing with the child almost two years later"); *Taylor*, 247 Or. App. at 347 (finding, "[a]s a matter of law, that state's "evidence of intent to commit perjury" and attorney's help "fall well short of what is needed to terminate the lawyer-client privilege"). Given this record and area of the law, DWC has not provided evidence sufficient to warrant *in camera* review on the basis of the crime-fraud exception.

Furthermore, in the insurance bad faith context, jurisdictions appear to make an explicit choice as to whether to apply the crime-fraud analysis to privilege issues. But while some jurisdictions have adopted a crime-fraud approach to bad faith insurance privilege issues, the "majority," including Oregon, have not. *See Spargo v. State Farm Fire & Cas. Co.*, No. 2:16-cv-03036-APG-GWF, 2017 WL 2695292, at *6-7 (D. Nev. June 22, 2017) (discussing approaches to issue and reasoning that the alternative *Hearn* approach "avoids the arguable confusion or weakening of the crime-fraud exception by applying it in the context of any insurance bad faith claim. . . . '[B]ad faith' does not necessarily equate to fraud") (citations omitted). Courts not applying the crime-fraud analysis in this context often apply the *Hearn* implied privilege waiver analysis. *See id*. Here, DWC directs this Court to the *Hearn* analysis as applied by the Ninth Circuit, which this Court applies below.

**C.  Waiver of Work-Product Protection or Attorney-Client Privilege**

PAGE 12 – OPINION AND ORDER

DWC argues that CBIC has put its communications with coverage counsel at issue in the litigation by asserting that "its consideration of coverage defenses proves its 'good faith,'" ECF 14 at 14 (internal citations omitted) thereby waiving attorney-client and work product protections. DWC's argument is not persuasive.

**1. No Waiver of Attorney-Client Privilege**

The Ninth Circuit uses a three-pronged test to determine if there has been an implied waiver of the attorney-client privilege:[1]

> First, the court considers whether the party is asserting the 'privilege as the result of some affirmative act, such as filing suit.' Second, the court examines whether 'through this affirmative act, the asserting party puts the privileged information at issue.' Finally, the court evaluates whether 'allowing the privilege would deny the opposing party access to information vital to its defense.'

*United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal citations omitted). The "overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

Because DWR has clearly failed to satisfy the third prong of the analysis, this Court focuses only on that portion of the Ninth Circuit test. DWR has not established that allowing the privilege would deny DWR access to information vital to its claims or defenses.

The Ninth Circuit has found that the attorney-client privilege is not waived at the third prong when the relevant mindset could be established by objective evidence without resorting to

---

[1] The Oregon Supreme Court has not articulated a waiver test, and DWC relies on a District of Oregon opinion applying the Ninth Circuit's test. *See* ECF 14 at 14-15 (citing *Dulcich, Inc. v. USI Ins. Servs. Nat'l, Inc.*, No. 3:18-CV-01089-YY, 2019 WL 1500701, at *2 (D. Or. Apr. 5, 2019).

privileged communications. *Home Indem. Co.*, 43 F.3d at 1326-27. In *Home Indem Co.*, a legal malpractice and contribution action arising from a bad faith insurance action, the court found that a settlement offer was itself sufficient evidence where the moving party sought privileged communications on "attorneys' states of mind, motivations, and intent with respect to their settlement negotiations"; "the cause of the failure of the settlement negotiations"; and litigants' "intent to settle." *Id*. The Court also explained that the reasonableness of a settlement amount can be established by objective evidence. *Id*. at 1327. In short, privileged communications "do not become discoverable simply because they are related to issues raised in the litigation" and the sought evidence is one of multiple forms of indirect evidence on an issue. *Amlani*, 169 F.3d at 1195. Rather, piercing the privilege is appropriate when other sources of evidence are "of little, if any, value" and a litigant "would be forced to rely almost exclusively on [the opponents'] characterization of events." *Id*. at 1196.

  Here, even if CBIC's litigation positions amounted to an affirmative act at prong one, and placed the communications "at issue" at prong two, DWC has not demonstrated that the communications are, at prong three, "vital" to DWC's claims and defenses. Nor does DWC show that it would "be forced to rely almost exclusively"—or at all—on CBIC's "characterization of events." *Amlani*, 169 F.3d at 1196. DWC has independent evidence of CBIC's behavior during the Thompson litigation and of multiple allegedly too-low settlement offers from CBIC. ECF 6 at ¶¶ 15-30. In sum, both parties have access to the grounds CBIC relied upon in reaching its coverage decision, when and how the facts were obtained, when interactions with coverage counsel occurred, when CBIC communicated coverage issues to DWC, CBIC's documented, alleged lack of communicativeness and improper behavior, and settlement offers made at various times. *See, e.g.,* ECF 14 at 5-6 (DWC's timeline of litigation and asserted privileged

PAGE 14 – OPINION AND ORDER

communications); ECF 6 at ¶¶ 15-30 (DWC's description of interactions between CBIC, DWC, and defense counsel, CBIC's allegedly too-low offers, and CBIC's alleged non-responsiveness); ECF 15-2 at 7-10 (Interrogatory Nos. 1-3 and CBIC's Responses); *see also Lexington*, 240 F.R.D. at 668, 670 (finding no waiver under substantially similar three-pronged test where party seeking insurer's coverage communications argued that bad faith actions "involve examining decisions made at various stages of the underlying litigation" but did "little to show" why sought communications were necessary to her defense); *Dixie Mill Supply Co. v. Cont'l Cas. Co.*, 168 F.R.D. 554, 559 (E.D. La. 1996) (explaining that the "reasonableness of the insurers' actions in a bad faith case can be proved by objective facts, which are not shielded from discovery and do not *necessarily* require the introduction of privileged communications at trial") (citing *Home Indem. Co.*, 43 F.3d at 1326-27) (emphasis in original). Furthermore, DWC brings its claims under Oregon law, wherein "the insurer's duty to the insured" is evaluated under "an objective test: Did the insurer exercise due care under the circumstances." *Maine Bonding & Cas. Co. v. Centennial Ins. Co.*, 298 Or. 514, 518-19 (1985) (en banc)). Indeed, injecting a "subjective element—the insurer's state of mind—into the formula" is "inappropriate." *Id*. at 519.

DWC has not demonstrated that access to the sought materials are vital to its claims or defenses.

### 2. No Waiver of Work Product Protection

DWC seeks materials on the ground that CBIC's consideration of coverage defenses is "directly at issue" and, therefore, DWC has substantial and compelling need for those communications. ECF 14 at 14. This Court finds that DWC has not shown that it is entitled to fact or opinion work product.

The work-product doctrine "affords special or heightened protection to materials that reveal an attorney's mental impressions or opinions. Such materials are generally referred to as 'opinion' or 'core' work product and are distinguished from 'fact' work product." *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019) (citing *Admiral Ins. Co.*, 881 F.2d at 1494; Fed. R. Civ. P. 26(b)(3)(B)). "Fact work-product may be ordered produced upon a showing of substantial need for the information and that the information cannot be otherwise obtained without undue hardship. Opinion or core work product, however, is discoverable only 'when mental impressions are at issue in a case and the need for the material is compelling.'" *Id*. (quoting *Holmgren v. State Farm Mutual Ass'n. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)) (internal citations omitted).

DWC focuses mostly on the opinion work product analysis. ECF 14 at 14-15. However, DWC misstates the Ninth Circuit's holding in *Holmgren*. In that case, the Ninth Circuit explained that in the context of a bad faith insurance coverage action, "on a case-by-case basis," an insured may be able to obtain opinion work product by demonstrating that the "mental impressions are *at issue* and their need for the material is compelling." *Holmgren*, 976 F.2d at 577 (emphasis in original). The court in *Holmgren* "rejected" an "automatic rule that work product must be turned over when a bad faith insurance claim is filed." *Siddall v. Allstate Ins. Co.*, 15 F. App'x 522, 523 (9th Cir. 2001). To be entitled to work product in an insurance bad faith action, the party "seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product." *Holmgren*, 976 F.2d at 577 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981)). "At a minimum, compelling need requires that the information sought is not available elsewhere or through the testimony of another witness." *MKB Constructors v. Am. Zurich Ins.*

*Co.*, No. C13-0611JLR, 2014 WL 2526901, at *3 (W.D. Wash. May 27, 2014) (interpreting *Holmgren*); *see also Holmgren*, 976 F.2d at 577-78 (explaining that "a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim" "[u]nless the information is available elsewhere," such as through adjusters' testimony).

Here, DWC has not demonstrated a sufficiently compelling need for the opinion work product sought. DWC merely states that "[t]here is no other way for DWC to get this information; it is solely in the possession of CBIC." ECF 14 at 14. But DWC has not "produce[d] any evidence to support the conclusion that the documents would provide information not available through other avenues of discovery" and does "not contend that [it] tried unsuccessfully to receive the information through other channels." *Siddall*, 15 F. App'x at 523 (rejecting compelling need argument in bad faith insurance action). As explained above, information regarding the insurer's opinion of the viability and value of the claim is available elsewhere.

DWC does not develop its argument for entitlement to fact work product. For similar reasons, DWC has not established its entitlement to any fact work product. It has not engaged with the facts and evidence available in this case and accordingly has not shown substantial need for the information and that the information cannot be otherwise obtained without undue hardship. Accordingly, DWC has not demonstrated need sufficient to pierce the work product protection.

## CONCLUSION

For the foregoing reasons, DWC's Motion to Compel, ECF 14, is GRANTED IN PART AND DENIED IN PART. CBIC is ordered to provide unredacted versions of the following:

PAGE 17 – OPINION AND ORDER

Ashlee Lepa's January 30, 2020 message to File regarding "coverage" on CBIC 859; Ashlee Lepa's February 6, 2020 message to File regarding "coverage," on CBIC 858; and Ashlee Lepa's February 14, 2020 message to File regarding "coverage," on CBIC 857.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge