# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **REESE THOMPSON and MARGARET THOMPSON**,<br><br>      Plaintiffs,<br><br>  v.<br><br>**DENNIS WIDMER CONSTRUCTION, INC., an Oregon Corporation**,<br><br>      Defendant.<br><br><br>**DENNIS WIDMER CONSTRUCTION, INC.**,<br><br>      Third-Party Plaintiff,<br><br>  v.<br><br>**EDGEWOOD CONSTRUCTION, LLC, an Oregon Limited Liability Company**,<br><br>      Third-Party Defendant.<br><br>  and<br><br>**CONTRACTORS BONDING AND INSURANCE COMPANY, an Illinois Corporation**,<br><br>      Garnishee. | Case No. 3:20-cv-01145-IM<br><br>**OPINION AND ORDER** |

Jason E. Hirshon, Slinde Nelson Stanford, 111 SW 5th Avenue, Suite 1940, Portland, OR 97204. Attorney for Plaintiffs.

Paul A. Mockford, Parsons Farnell & Grein LLP, 1030 SW Morrison Street, Portland, OR 97205. Attorney for Defendant and Third-Party Plaintiff.

David P. Rossmiller and Elissa M. Boyd, Betts, Patterson & Mines, P.S., 111 SW Fifth Avenue, Suite 3650, Portland, OR 97204. Attorneys for Garnishee.

**IMMERGUT, District Judge.**

This matter comes before the Court on Garnishee Contractors Bonding and Insurance Company's ("CBIC") Motion to Compel production by Defendant/Third-Party Plaintiff Dennis Widmer Construction, Inc. ("DWC") and Plaintiffs Reese and Margaret Thompson ("Thompsons"). ECF 28. CBIC moves the Court for an order compelling DWC and the Thompsons to produce "unredacted copies of the documents highlighted [i]n Exhibits 3-5 of the Declaration of David P. Rossmiller." *Id*. at 2. In all, CBIC is requesting the production of thirty-four documents identified in the Thompsons' privilege log, 484 documents identified in DWC's privilege log, and the unredacted version of Kenneth Walhood's file notes for the underlying lawsuit. *See* ECF 29-3 (DWC Privilege Log), 29-4 (File Notes), 29-5 (Thompson Privilege Log).

Because the Court has decided that oral argument would not help resolve this matter, the parties' requests for argument are DENIED. For the following reasons, CBIC's Motion to Compel, ECF 28 is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case began as a construction lawsuit. Plaintiffs Reese and Margaret Thompson sued DWC, their general contractor, in Oregon state court ("Thompson litigation") for property damage to their home. ECF 6 at ¶¶ 6, 11, 14. DWC had an insurance policy with CBIC, Commercial General Liability Policy number D12HA1537 ("Policy"), under which CBIC

PAGE 2 – OPINION AND ORDER

defended DWC in this lawsuit. ECF 3 at 6; ECF 6 at ¶¶ 5, 12. CBIC defended DWC under a reservation of rights. ECF 6 at ¶ 12.

DWC alleges that in the Thompson litigation, CBIC repeatedly refused to settle, was not responsive to the Thompsons' offers or DWC's communications, and only offered to pay settlement amounts that were too low. *See* ECF 6 at ¶¶ 15–35, 37. The Thompsons offered to settle their claims against DWC first for $250,851 and then for $198,000. *Id*. at ¶¶ 15, 18. DWC's defense counsel opined to CBIC that DWC faced liability for between $190,000 and $280,000 at trial. *Id*. at ¶ 19. CBIC offered between $40,000 and $60,000 to settle. *Id*. at ¶¶ 17, 24, 28.

After CBIC notified DWC's defense counsel that CBIC would not pay more than $60,000 to settle the Thompson litigation, DWC agreed with the Thompsons to proceed with a stipulated judgment of $225,000 liability for DWC. *Id*. at ¶¶ 24–29. On May 20, 2020 the state court entered a judgment against DWC and in favor of the Thompsons for $225,000. *Id*. at ¶ 30. On June 15, 2020, the Thompsons, now judgment creditors, served a Writ of Garnishment on CBIC, an insurer of DWC. ECF 1 at ¶ 2; ECF 6 at ¶ 36.

On July 15, 2020, Garnishee CBIC removed the Writ of Garnishment proceeding to this Court based on diversity. ECF 1. On July 16, 2020, CBIC responded, denying that it owes any debt "to the Thompsons as Garnishors or to DWC pursuant to the applicable Policy provisions, exclusions and limitations." ECF 3 at 6.

On September 16, 2020, DWC filed crossclaims against CBIC. ECF 6. DWC alleges that in the Thompson litigation, CBIC breached its contractual and fiduciary duties to DWC by, among other things, failing to settle the Thompson litigation against DWC and refusing to pay the resulting judgment against DWC. ECF 6 at ¶ 1; *see also id*. at ¶¶ 15–35, 37–55. On October

PAGE 3 – OPINION AND ORDER

7, 2020, CBIC answered DWC's crossclaims, asserting affirmative defenses of failure to state a claim, unclean hands, no coverage, waiver, and estoppel. ECF 11 at ¶¶ 58–63. CBIC also brings counterclaims for a declaratory judgment that it does not owe a duty to indemnify DWC and for breach of contract. *Id*. at 10, 14; *id*. at ¶¶ 16–25.

On February 5, 2021, DWC filed a Motion to Compel and supporting materials seeking unredacted copies of a limited number of documents. ECF 14; ECF 15. Following a hearing and *in camera* review, ECF 21, this Court granted in part and denied in part DWC's motion, ECF 22.

On September 8, 2021, CBIC filed this Motion to Compel and supporting materials. ECF 28; ECF 29. CBIC seeks unredacted copies of a bevy of documents from DWC's and the Thompsons' privilege logs—totaling 518 documents—as well as the unredacted version of defense counsel's file notes for the Thompson litigation. ECF 29-3; ECF 29-4; ECF 29-5. CBIC argues that: (1) Oregon's "tripartite" rule created an attorney-client relationship between defense counsel, DWC, and CBIC such that no privilege can exclude CBIC, ECF 28 at 5–8; (2) that there can be no common interest or attorney-client privilege over communications not kept confidential between DWC and their counsel (or between the Thompsons and their counsel), *id*. at 8–9; and (3) that the mediation privilege does not apply to communications made after a settlement agreement was signed, *id*. at 10, or to communications involving defense counsel or CBIC's agents and employees, *id*. at 10–11.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 26(b)(1), parties may discover any unprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Pre-trial discovery is "accorded a broad and liberal treatment." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal quotation marks omitted) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

PAGE 4 – OPINION AND ORDER

The parties agree that Oregon law governs the attorney-client privilege analysis and federal law, specifically the Federal Rules of Civil Procedure, governs the work product protection analysis. *See* ECF 14 at 6; ECF 16 at 5; ECF 28 at 4; ECF 30 at 4–5 (citing Oregon law for attorney-client arguments and the Federal Rules for work product arguments); *see also Triangle Park, LLC v. Indian Harbor Ins. Co.*, No. 08-CV-1256-BR, 2010 WL 11579377, at *5 (D. Or. July 23, 2010); *Union Pac. R.R. Co. v. Mower*, 219 F.3d 1069, 1076 n.8 (9th Cir. 2000).

Oregon's attorney-client privilege is codified by statute and provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . ." O.R.S. 40.225(2) (alternatively cited as Oregon Rule of Evidence 503). The attorney-client privilege applies when: (1) the communication was "confidential," (2) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (3) the communication was between the lawyer and the client. *State ex rel. Or. Health Scis. Univ. v. Haas*, 325 Or. 492, 501 (1997). The party asserting the privilege bears the burden of establishing that the privilege applies. *See State v. Serrano*, 346 Or. 311, 325 (2009).

Federal Rule of Civil Procedure 26 protects attorney work product from discovery if it was prepared in anticipation of litigation by a party or its representative. *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989); *Triangle Park*, 2010 WL 11579377, at *6. "The party asserting the work product doctrine bears the burden of establishing, for each document, the rule's application." *Triangle Park*, 2010 WL 11579377, at *6 (internal quotation marks and citation omitted).

PAGE 5 – OPINION AND ORDER

The parties also agree that the mediation privilege is created by O.R.S. 36.100 *et seq*. *See* ECF 28 at 10–11; ECF 30 at 9–10. Except as otherwise provided by statute, "[m]ediation communications are confidential and may not be disclosed to any other person." O.R.S. 36.220(1)(a). Even so, a "party to a mediation may disclose confidential mediation communications to a person if the party's communication with that person is privileged under [the Oregon Rules of Evidence]." O.R.S. 36.220(7). Confidential mediation communications "are not admissible as evidence in any subsequent adjudicatory proceeding, and may not be disclosed by the parties or the mediator in any subsequent adjudicatory proceeding." O.R.S. 36.222(1). "The limitations on admissibility and disclosure in subsequent adjudicatory proceedings . . . apply to any subsequent judicial proceeding . . . includ[ing] disclosure during and discovery conducted." O.R.S. 36.222(7).

## DISCUSSION

CBIC seeks a motion to compel production of four broad categories of documents. First, CBIC seeks correspondence between DWC and assigned defense counsel, Kenneth Walhood. ECF 28 at 3. Second, and relatedly, CBIC seeks from DWC "a plethora of documents redacted based on the purported attorney-client and work product privileges" that relate to the Thompson litigation and are either to, from, or by defense counsel. *Id*. Third, CBIC seeks from both DWC and the Thompsons documents that included counsel for underlying defendant Edgewood Construction, LLC. *Id*. at 3–4. Fourth, CBIC seeks from DWC and the Thompsons documents that were withheld under the mediation privilege that either (i) include DWC's defense counsel or CBIC's employees or agents or (ii) are dated after the mediation concluded. *Id*. at 4.

**A.  Correspondence between DWC and Defense Counsel**

PAGE 6 – OPINION AND ORDER

DWC withheld correspondence between it and defense counsel Kenneth Walhood, whom CBIC hired, based on attorney-client privilege. CBIC argues that the attorney-client privilege does not exist between co-clients and their shared counsel. *See id*. at 5–6.

The attorney-client privilege does not apply "[a]s to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients." O.R.S. 40.225(4)(e). It is true, as CBIC states, that Oregon law recognizes "a tripartite representation relationship in which an insurer retains legal counsel to represent both an insured and the insurer." *Hertz Corp. v. Katzung*, No. 3:20-cv-269-SI, 2021 WL 1187039, at *5 (D. Or. 2021). But "[t]o minimize th[e] risk" of a conflict of interest "and to permit joint representation in such cases, both the ethical rules and insurance law require that a lawyer hired by the insurer to defend an insured must treat the insured as 'the primary client' whose protection must be the lawyer's 'dominant' concern." Or. State Bar, Formal Op. No. 2005-121 (2016).

When it comes to the interplay between attorney-client privilege, the tripartite relationship, and discovery, neither party cites case law directly on point. But DWC directs the Court to the Restatement of the Law of Liability Insurance § 11(2) (Am. L. Inst. 2019):

> An insurer does not have the right to receive *any information of the insured* that is protected by attorney-client privilege, work-product immunity, or a defense lawyer's duty of confidentiality under rules of professional conduct, *if that information could be used to benefit the insurer at the expense of the insured* (emphasis added).

*See* ECF 30 at 7. Also cutting against CBIC's position that it has a right to all correspondence between DWC and defense counsel is the fact an insurer and insured's "interests [can] become antagonistic" such that "some courts have held that the 'insurer must not be allowed to use against its insured any information whatsoever gained by reason of the insurer-insured relationship." *Hosp. Mgmt., Inc. v. Preferred Contractors Ins. Co*., No. 3:18-cv-00452-YY, 2021

PAGE 7 – OPINION AND ORDER

WL 3700264, at *19 (D. Or. Mar 17, 2021), *report and recommendation adopted,* No. 3:18-CV-452-YY, 2021 WL 2813610 (D. Or. Jul 6, 2021) (quoting *Lima v. Chambers*, 657 P.2d 279, 285 (Utah 1982)).

The Court also notes that the cases relied on by CBIC are distinguishable. Of particular note is *Hertz Corp. v. Katzung*, 2021 WL 1187039, which also concerned motions to compel between an insured and insurer. "The primary question" in *Hertz* was "whether the attorney had sufficiently begun representing the insured to entitle the insured to see otherwise privileged communications between the attorney and the insurer relating to this tripartite representation, notwithstanding the fact that the attorney never communicated with the insured and the insured never even became aware of the attorney's existence or representation of the insured." *Id*. at *1. Ultimately, the court found that no attorney-client relationship had formed between the insured and the lawyer because the attorney discovered a conflict of interest between the insurer and insured before either the insurer or the attorney communicated with the insured about the representation. *Id*. at *5–6. Here, on the other hand, the communications at issue are between the attorney and the insured. Moreover, as DWC points out, *Hertz* involved an *insured* seeking information from an *insurer* that was arguably attorney-client privileged. ECF 30 at 8. None of the other concerns at play here—the insured being the dominant concern of the attorney and the risk of the insurer using the information against the insured—were present in *Hertz*.

Here, defense counsel Kenneth Walhood understood himself to be representing solely DWC when he communicated with DWC's coverage counsel. *See* ECF 32, Walhood Decl., at ¶ 4. All communications between defense counsel Kenneth Walhood and coverage counsel Paul Mockford are attorney-client privileged and CBIC may not discover them.

PAGE 8 – OPINION AND ORDER

As CBIC acknowledges in its brief, its "coverage analysis has always concluded that very little of the damages claimed in the Thompsons' construction defect lawsuit against DWC . . . was covered." ECF 28 at 2. To the extent that DWC and CBIC had a common interest in the Thompson litigation, it was clearly circumscribed. Put another way, DWC was solely interested in defeating the Thompsons' claims or settling, while CBIC could avoid liability either by defeating the Thompsons' claims or by finding that the alleged damages were not covered. CBIC expressed no interest in settling for an amount that the Thompsons would have accepted. *See* ECF 6 at ¶¶ 17, 24, 28. Thus, all communications between DWC and Kenneth Walhood relating to settlement are attorney-client privileged and not subject to the "common interest" exception of O.R.S. 40.225(4)(e).

Finally, as to any communications between DWC and Kenneth Walhood relating to the Thompson litigation but not settlement, the considerations in Oregon State Bar Formal Opinion No. 2005-12; *Hospitality Management, Inc.*, 2021 WL 3700264, at *19; and Restatement of the Law of Liability Insurance § 11(2) favor protection. CBIC cannot now use the communications between its insured—DWC—and retained defense counsel to deny coverage.

**B.  Documents about the Thompson litigation to, from, or by Defense Counsel**

DWC also withheld documents to, from, or by defense counsel based on attorney-client and work-product privileges. ECF 28 at 3. Every document labeled as work product in DWC's privilege log is also labeled as attorney-client privileged, *see generally* ECF 29-3, and thus not discoverable to the extent outlined above. As to the defense file, ECF 29-4, the Court understands from the parties' briefing that (1) DWC claimed that defense counsel's file was work product and therefore privileged, but (2) that DWC still produced a redacted copy because CBIC claimed compelling need. ECF 28 at 3; ECF 30 at 9 n.4. Thus, there is no work-product

protection at issue regarding the overall file. The redactions to the defense file asserted attorney-client and mediation privileges rather than work-product, ECF 29-4, so their discoverability is governed by the Court's rulings on those issues. As explained above, the redactions based on attorney-client privilege are proper if they are communications between DWC and Kenneth Walhood, whether about settlement or the Thompson litigation. As explained more fully below, the redactions based on mediation privilege are proper if they reflect communications made before the Settlement Agreement was signed on May 11, 2020. There is one unexplained redaction, *id*. at 3; DWC is ordered either to explain why this portion was redacted or provide a version of the defense file with that portion unredacted.

Even if the attorney-client privilege did not apply, CBIC would not be able to discover every document labeled work product. CBIC argues that Federal Rule of Civil Procedure 26(b)(3) "includes in the work-product protection a party's representative 'including the other party's attorney . . . <u>insurer</u>, or agent.'" ECF 28 at 8 (emphasis added by CBIC). This misreads Rule 23(b)(3), which categorically precludes, unless otherwise permitted, the discovery of "documents . . . prepared in anticipation of litigation . . . for . . . the other party's . . . insured." Fed. R. Civ. P. 23(b)(3)(A). This Court has previously found that a failed mediation on January 22, 2020 triggered CBIC's anticipation of litigation. ECF 22 at 9. That date is also when DWC admittedly anticipated litigation. ECF 30 at 8. Anything prepared by defense counsel after that date is entitled to work product protection and is not discoverable on that basis.[1] In contrast,

---

[1] Nor has CBIC shown that it has a compelling need for either the fact work product or defense counsel's mental impressions. ECF 28 at 8. CBIC claims that fact work-product is needed to show "how the settlement agreement came to be and what damages could have been included in the same." *Id*. CBIC also seeks defense counsel's mental impressions because they were "a substantial factor in settling around CBIC and are therefore at issue in determining whether there was a breach of contract." *Id*. These general assertions do not satisfy CBIC's burden of showing compelling need where CBIC has two settlement demands from the

anything prepared before January 22, 2020, though, could not have been prepared in anticipation of litigation and is not entitled to work-product protection.

**C. Documents Including Counsel for Underlying Defendant Edgewood Construction, LLC**

Next, CBIC seeks documents shared with "lawyers for [underlying defendant] Edgewood[, LLC] or others not employed by DWC's coverage counsel." ECF 28 at 8. The Thompsons have represented that during conferral for this motion, they explained to CBIC that they did not intend to withhold documents for purposes other than the mediation privilege. ECF 33 at 2. The Thompsons submitted as an attachment an updated privilege log reclassifying six of the documents CBIC seeks as mediation privileged. ECF 34-1 at 7-8 (Entry Nos. 85, 86, 88, 98, 104, 105). The Court accepts this updated privilege log and will analyze those documents under the mediation privilege in the next section.

There are two documents, which CBIC seeks as communications with someone whose inclusion destroys any privilege, that have not been reclassified as mediation privileged. These documents are PRIV000051 (Entry No. 38) and PRIV000052 (Entry No. 39). ECF 29-5 at 5; ECF 34-1 at 4. One recipient of these documents—Jason Hirshon—is counsel for the Thompsons, while the others'[2] relationships to the Thompsons are unknown to the Court. The sender of these documents—Lisa Maguire—appears to be the assistant to a prior mediator and was also copied on several communications with the later mediator. *See* ECF 29-7 at 2 (Entry

---

Thompsons to establish damages and defense counsel's settlement evaluations to show his mental impressions about the settlement. ECF 11 at ¶ 15 (CBIC's admission to being aware of a settlement demand for $250,851); ECF 15-6 (Walhood settlement evaluation); ECF 15-7 at 1 (March 4, 2020 letter from DWC's coverage counsel demanding settlement for $198,000); ECF 15-10 (May 11, 2020 letter from DWC's coverage counsel explaining the stipulated judgment).

[2] Matthew Juhren and Kristen Wiljanen.

PAGE 11 – OPINION AND ORDER

No. 104). If these documents are mediation privileged, the Thompsons should update their privilege log accordingly.

Finally, the Thompsons—without reclassifying which privileges might apply—have designated as "Downgrade to Produce" three documents: PRIV000494 (Entry No. 11), PRIV000495 (Entry No. 12), and PRIV 000061 (Entry No. 77). ECF 34-1 at 1, 6. If they have not done so already, the Thompsons should produce these documents to CBIC.

### D.  Documents Relating to Mediation

The last category of documents CBIC seeks are those about which DWC and the Thompsons have invoked mediation privilege under O.R.S. 36.100 *et seq*. CBIC argues that it is entitled to (1) documents from after the signing of the Settlement Agreement on May 11, 2020 and (2) documents including defense counsel or CBIC's agents and employees. ECF 28 at 10–11.

During the discovery process, DWC informed CBIC that it believed that the mediation privilege applies until the mediator ceases communication with the parties. ECF 29-7 at 5. The Oregon Supreme Court, however, has stated that:

> [C]ommunications that occur after a settlement agreement is signed are not 'mediation communications' within the meaning of ORS 36.110(7)(a) and are neither prohibited from disclosure under ORS 36.220 nor inadmissible under 36.222. A communication is thus 'in the course of or in connection with' a mediation only if it is made during and at a mediation proceeding or occurs outside of a proceeding but relates to the substance of the dispute being mediated and is made before a resolution is reached or the process is otherwise terminated.

*Alfieri v. Solomon*, 358 Or. 383, 397 (2015) (footnote omitted). DWC urges that CBIC "overreads" *Alfieri* because, unlike the parties in that case, CBIC was not a party to the mediation. ECF 30 at 10. But DWC does not point to any language in *Alfieri* or any other case that persuades this Court that such a distinction is noteworthy. Communications made after "a

PAGE 12 – OPINION AND ORDER

resolution is reached" are no longer mediation communications and so no longer fall under the mediation privilege. Unless they are otherwise privileged, DWC and the Thompsons are ordered to produce these documents.

As for the mediation communications that included defense counsel or CBIC's agents or employees, CBIC's arguments fail. First, CBIC argues that the communications involving defense counsel implicate the tripartite relationship and O.R.S. 36.220 provides that "a party to a mediation may disclose confidential mediation communications to a person if the party's communication with that person is privileged under [O.R.S. 40.225]." *See* ECF 28 at 5. As DWC points out, the permissive language of O.R.S. 36.220 does not obligate disclosure. ECF 30 at 10. Moreover, O.R.S. 36.222(7) provides that "[t]he limitations on admissibility and disclosure in subsequent adjudicatory proceedings imposed by this section apply to any subsequent judicial proceeding . . . [and] include disclosure during any discovery conducted as part of a subsequent adjudicatory proceeding." Indeed, the mediation agreement itself provided that "[a]ll mediation communications . . . are (to the fullest extent permitted by law) non-discoverable and inadmissible for any purpose in any arbitral, judicial or other proceeding." ECF 34 at 14. Finally, if any mediation communications were made with CBIC, its agents, or employees, the need for discovery is unclear since those documents would already be in CBIC's possession.

## CONCLUSION

For the foregoing reasons, CBIC's Motion to Compel, ECF 28, is GRANTED IN PART and DENIED IN PART. DWC and the Thompsons are ordered to produce all communications marked as mediation-privileged dated after the Settlement Agreement signed on May 11, 2020 unless those documents are otherwise privileged. DWC is also ordered to produce any

documents marked as work-product privileged from before the date DWC anticipated litigation—that is, January 22, 2020—unless otherwise privileged.

**IT IS SO ORDERED**.

DATED this 10th day of November, 2021.

/s/ Karin J. Immergut  
Karin J. Immergut  
United States District Judge

PAGE 14 – OPINION AND ORDER